20-4170
Al Omaisi v. Garland

BIA
A079 120 289

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12ᵗʰ day of December, two thousand twenty-three.

PRESENT:
> REENA RAGGI,
> RAYMOND J. LOHIER, JR.,
> BETH ROBINSON,
> *Circuit Judges.*

_____

HAZAEA MOHAMMED SENAN AL OMAISI,
> *Petitioner*,

v.                                                            20-4170
                                                             NAC

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:** Kai W. De Graaf, New York, NY.

**FOR RESPONDENT:** Brian M. Boynton, Acting Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Sherease Pratt, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED the petition for review is GRANTED, the denial of reopening is VACATED, and the case is REMANDED to the BIA for further consideration of the motion to reopen in light of this decision.

Petitioner Hazaea Mohammed Senan Al Omaisi, a native and citizen of Yemen who was removed from the United States to Yemen in January 2020, seeks review of a November 20, 2020 decision of the BIA denying his post-removal motion to reopen his removal proceedings so that he can apply for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Al Omaisi*, No. A079 120 289 (B.I.A. Nov. 20, 2020). We assume the parties' familiarity with the underlying facts and procedural history.

A motion to reopen removal proceedings "shall not be granted unless it

2

appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Heredia v. Sessions*, 865 F.3d 60, 65 (2d Cir. 2017) (quoting 8 C.F.R. § 1003.2(c)(1)). Moreover, to secure reopening, a petitioner must demonstrate "*prima facie* eligibility for asylum," *i.e.*, a "realistic chance" that he will be able to obtain such relief. *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168 (2d Cir. 2008) (internal quotation marks omitted). This requires the petitioner "to carry the heavy burden of demonstrating that the proffered new evidence would likely alter the result in h[is] case." *Id.* (internal quotation marks omitted). Generally, a motion to reopen must be made within 90 days of a final order of removal, but that time limit does not apply if asylum or related relief is sought based on materially changed conditions in the country to which removal has been ordered. 8 U.S.C. § 1229a(c)(7)(C)(i), (ii); 8 C.F.R. § 1003.2(c)(2), (3).

We review the BIA's decision denying reopening for abuse of discretion, *see Ali v. Gonzales*, 448 F.3d 515, 517 (2d Cir. 2006), which we will identify only if the BIA's decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or

3

conclusory statements." *Qin Wen Zheng v. Gonzales*, 500 F.3d 143, 146 (2d Cir. 2007) (internal quotation marks omitted). "Despite our generally deferential review of . . . BIA opinions, we require a certain minimum level of analysis to allow for meaningful judicial review." *Scarlett v. Barr*, 957 F.3d 316, 329 (2d Cir. 2020) (internal quotation marks omitted). Although the "BIA need not expressly parse or refute on the record each . . . piece of evidence offered by the petitioner, there must be some indication of reasoned consideration and adequate findings." *Id.* (internal quotation marks omitted).

It is undisputed that Al Omaisi's 2020 motion to reopen was filed more than 90 days after his 2006 removal order. The BIA agreed, however, that conditions in Yemen have changed since 2006 and that the changed conditions in Yemen were "material to [Al Omaisi's] potential claim." Certified Administrative Record ("CAR") 4. Accordingly, Al Omaisi's motion is not time barred.

The BIA nonetheless concluded that Al Omaisi failed to carry his burden to establish *prima facie* eligibility for the relief sought and to submit evidence to support a grant of relief.[1] The BIA stated that Al Omaisi failed to allege that he

---

[1] The BIA also declined to exercise its authority to reopen *sua sponte*. We do not address

4

had received specific threats of future harm on a protected ground or to identify aspects of the record showing an objectively reasonable fear of future persecution. On the present record, we conclude that the BIA exceeded its discretion in reaching that conclusion without further analysis. *See Qin Wen Zheng v. Gonzales*, 500 F.3d at 146; *Scarlett v. Barr*, 957 F.3d at 329. That is because the record appears to demonstrate Al Omaisi's *prima facie* eligibility for asylum.

Because Al Omaisi did not claim past persecution, he had to demonstrate a well-founded fear of future persecution on a protected ground in order to establish *prima facie* eligibility for asylum. *See* 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13(a), (b). An applicant may make this showing by demonstrating a "pattern or practice" of persecuting similarly situated people. 8 C.F.R. §§ 1208.13(b)(2)(iii), 1208.16(b)(2). To make a pattern or practice claim, an applicant must demonstrate both membership in a group and persecution of that group that is "systemic or pervasive." *In re A–M–*, 23 I. & N. Dec. 737, 741 (B.I.A. 2005).

As to group membership, Al Omaisi alleged that he was susceptible to

---

that aspect of its decision, which Al Omaisi does not challenge. *See Ali v. Gonzales*, 448 F.3d at 518 (holding that we lack jurisdiction to review BIA's "entirely discretionary" decision not to reopen *sua sponte*).

5

persecution in Yemen based on his (1) publicly expressed political opinions against the Houthis in control of northern Yemen (including his former home village in the Sanaa governate) and the militia groups active elsewhere in the country (including Aden, to where he was deported), (2) more than 20 years residency in the United States before removal, and (3) status as a northern Yemeni displaced to the south. Al Omaisi alleged a series of encounters during his first few weeks in Yemen that, if true, might support a conclusion that potential persecutors recognized that he had these characteristics, as well as a threat against his family while he was still in the United States because of his political activities.

Al Omaisi also presented evidence of widespread persecution in Yemen on these grounds. *See, e.g.*, CAR 244–46, 248–49, 253–54, 258, 260–61 (detailing persecution of political opponents of Houthis, the Yemeni government, and militias backed by Saudi Arabia); *id.* at 296 (same); *id.* at 246 (citing abuse of internally displaced persons by security forces controlling Aden); *id.* at 210 (asserting that northerners in southern Yemen "face regular discrimination, persecution, imprisonment, deportation and general hostility"; "thousands of northerners living in Aden during the past several years" were deported or

6

imprisoned; and Houthis and terrorist groups active in Yemen "are deeply hostile toward the United States" and "would likely imprison and torture" person who had recently lived in United States "for propaganda purposes"); *id.* at 63 (reporting conflict with Houthis began when members of a militant group chanted "Death to America!" in then-president's presence); *see also id.* at 283 (warning that U.S. citizens and dual national Yemeni-Americans are at "very high risk of kidnapping" and detention).[2]

Here, the BIA failed to explain why this evidence did not establish a *prima facie* pattern or practice claim, and that conclusion is not obvious from the evidence itself. Moreover, although the BIA correctly stated that Al Omaisi failed to allege any specific threat of future harm on a protected ground, the BIA did not explain why evidence of such a threat is necessary where Al Omaisi asserted a series of

---

[2] The Government asserts that Al Omaisi presented substantial evidence of a risk of indiscriminate harm rather than targeted harm. But evidence of potential indiscriminate harm does not undermine Al Omaisi's claim that he is *also* likely to be harmed on the basis of a protected ground. To the contrary, these conditions support his claim that he cannot reasonably avoid persecution by relocating within Yemen and that the Yemeni government is unable to control potential persecutors—both issues on which he carries the burden of proof. *See* 8 C.F.R. §§ 1208.1, 1208.13(b)(2)(ii), (3). The Government also argues that the Court should not order Al Omaisi's immediate return to the United States. We need not consider that issue, as Al Omaisi does not explicitly request that relief.

7

implicitly threatening encounters himself and an explicit threat against his family related to protected grounds and also presented country-condition evidence showing abuses of similarly situated people. On this record, the BIA's summary conclusion that Al Omaisi did not present evidence indicating an objectively reasonable fear of future persecution is insufficient for us confidently to conclude that the BIA acted within its discretion in denying reopening. On remand, the BIA should reconsider Al Omaisi's motion to reopen, providing greater explanation for any further denial decision in light of the record evidence or granting reopening.[3]

Al Omaisi's due process argument, on the other hand, is without merit. Al Omaisi does not explain what remedy we should or could provide if we were to identify a due process violation. In any event, Al Omaisi cannot establish a due process violation stemming from his removal because he could have sought reopening earlier given that the conditions that form the basis of his claim existed for years prior to his 2020 removal. *See Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) ("Parties claiming denial of due process in immigration cases must,

---

[3] Because we remand as to asylum, we do not separately consider whether the BIA abused its discretion in finding that Al Omaisi did not state a *prima facie* CAT claim.

8

in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process." (internal quotation marks omitted)).  In sum, Al Omaisi cannot fairly attribute the lack of opportunity to move for reopening prior to removal to any government process.

For the foregoing reasons, the petition for review is GRANTED, the denial of reopening is VACATED, and the case is REMANDED to the BIA for further consideration of the motion to reopen in light of this decision.  All pending motions and applications are DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

9