Gui CI PAN, Petitioner,

v.

## UNITED STATES ATTORNEY GENERAL, Respondent.

**Docket No. 04–5265–AG.**

United States Court of Appeals, Second Circuit.

Argued: May 10, 2006.

Decided: May 23, 2006.

Gang Zhou, New York, NY, for Petitioner.

Jonathan D. Colan, Assistant United States Attorney (R. Alexander Acosta, United States Attorney, Anne R. Schultz, Chief, Appellate Division, Laura Thomas Rivero, Assistant United States Attorney, on the brief), United States Attorney's Office for the Southern District of Florida, Miami, FL, for Respondent.

Before: WINTER, CABRANES, and RAGGI, Circuit Judges.

PER CURIAM.

Petitioner Gui Ci Pan, a native and citizen of the People's Republic of China, seeks review of a September 13, 2004 order of the BIA affirming the July 23, 2003 decision of Immigration Judge Gabriel C. Videla ("the IJ") denying petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In his asylum application, supporting statement, and testimony before the IJ, Pan claimed that he had been persecuted for violating the Chinese family planning policy and that he faces a well-founded fear of future persecution if he is returned to China.

The IJ denied Pan's claim on the grounds that (1) Pan had failed to "credibly establish[ ]" that he and his girlfriend had undergone either a traditional wedding ceremony or a legal marriage in China; (2) because Pan was not married to his girlfriend, he "has no legal status to argue that there would be any consequences to him" under the Chinese family planning policy; and (3) Pan had failed to present "any evidence that he would be imprisoned," fined, or beaten "simply because he got his girlfriend pregnant while they were not married ... or that either of them would be sterilized." *In re Gui Ci Pan,* File No. A 77 998 158 (New York, N.Y. July 23, 2003) ("IJ Decision"), at 7–8. We hold that, although the IJ's factual findings regarding Pan's marital status are supported by substantial evidence, we are required under *Shi Liang Lin v. U.S. Dep't of Justice,* 416 F.3d 184 (2d Cir.2005), to remand to the BIA so that the agency may determine in the first instance whether Pan's status as a boyfriend and father would allow him, under the circumstances presented, to qualify as a refugee under 8 U.S.C. § 1101(a)(42) and the BIA's decision in *In re C–Y–Z–,* 21 I. & N. Dec. 915 (BIA 1997) (en banc). We remand also for the agency to reach a definitive general credibility finding regarding Pan's testimony and supporting statements and to determine whether Pan has established a

credible claim of past persecution based on the facts presented.

## BACKGROUND

In his asylum application and supporting statement, Pan claimed that he met his girlfriend, Jie Yan, in August 1999, and that they started living together in January 2001. According to Pan, the couple wanted to get married, but they were unable to do so because Pan's girlfriend had not yet reached the legal age requirement. Pan claimed that his girlfriend became pregnant in November 2001, and that as a result, they had "unintentionally" violated the Chinese family planning policy. Shortly thereafter, the village Party secretary, who lived across the street, became aware of the pregnancy and informed Pan that his girlfriend would be required to undergo an abortion.

Pan stated that he and his girlfriend then went into hiding at his aunt's house and that Pan's mother informed him by phone that the village women's director had brought family planning officers to his home to look for him and his girlfriend. He stated that the couple continued to hide at a relative's house for three months, until Pan decided that he would find a "snakehead" to smuggle him into the United States. Although his girlfriend initially wished to go with him, according to Pan, the snakehead refused to bring her because it was too dangerous for a pregnant woman to make the trip. Pan stated that his girlfriend is still in hiding, and that his mother now cares for his child, which was born in June 2002. Pan claimed that if he returns to China, he will be imprisoned, fined, and beaten, and either he or his girlfriend will be sterilized. In addition, Pan claimed that he will be unable to register his child with the government because he and his girlfriend were "married without [a] marriage license."

At his hearing before the IJ, Pan testified that he had married his girlfriend in a traditional Chinese wedding ceremony conducted in January 2001 before their parents and relatives. When the IJ asked Pan why he had not mentioned this marriage ceremony in either his asylum application or supporting statement, Pan replied that the ceremony was "pretty small" and that he "felt that it wasn't that important" to mention it. He further testified that he had referred to Jie Yan as his "girlfriend" throughout his asylum application and statement because he would have been "in big trouble" in China for claiming to have a wife without a legal marriage certificate.

The IJ denied Pan's claims for asylum, withholding of removal, and relief under the CAT on the grounds, *inter alia*, that he had failed to "credibly establish[ ]" that he had married his girlfriend, either through a traditional ceremony or a legal marriage, and as a result, Pan lacked the "legal status" to claim that he would suffer "any consequences" under the Chinese family planning policy. IJ Decision at 7–8. The IJ further held that Pan had failed to present "any evidence that he would be imprisoned," fined, or beaten "simply because he got his girlfriend pregnant while they were not married . . . or that either of them would be sterilized." *Id.* at 8. The BIA summarily affirmed the IJ's decision without opinion. This petition for review followed.

## DISCUSSION

■ Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision directly as the final agency determination. *Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir.2006). We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard,

overturning them only if any reasonable adjudicator would be compelled to conclude to the contrary. *See* 8 U.S.C. § 1252(b)(4)(B); *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 156–58 (2d Cir.2006); *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir.2004).

In this case, the IJ primarily found that Pan was not eligible for asylum because he had failed to "credibly establish[ ] that he and his girlfriend [had undergone] a traditional wedding ceremony" in China. *See* IJ Decision at 7. Although Pan had indicated in his asylum application and his attached statement that he and his girlfriend had been "married without [a] marriage license," *see* J.A. at 161; *see also id.* at 155, 156 ("I got married and had [a] child without [a] marriage license."), the IJ emphasized other inconsistencies in the record as to whether Pan had in fact married his girlfriend—namely, (1) the failure of both Pan and his girlfriend to mention anywhere in their respective written statements that they had undergone a traditional wedding ceremony; and (2) the fact that Pan's statement consistently referred to the mother of his child as his "girlfriend," rather than his wife, while the letter submitted by Pan's girlfriend in support of his claim referred to Pan as her "boyfriend," rather than her husband. *See* IJ Decision at 7.

Congress has specified that an IJ's "administrative findings of fact are *conclusive* unless any reasonable adjudicator would be *compelled* to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B) (emphases added), and we have emphasized before that "our limited role as an appellate court does not permit us to engage in an independent evaluation of the cold record or ask ourselves whether, if we were sitting as factfinders in the first instance, we would credit or discredit an applicant's testimony," *Xiao Ji Chen*, 434 F.3d at 157. In this case, although there is some ambiguity in the IJ's decision as to whether he in fact considered Pan's specific statement that he had been "married without [a] marriage license"—such ambiguity arising out of the IJ's conclusion that "there is no mention of any marriage" in Pan's statement, *see* IJ Decision at 7—we cannot say here that "any reasonable adjudicator" would be "compelled" to reach a contrary conclusion—namely, that Pan did in fact marry his girlfriend.[1] Accordingly, the IJ's factual finding that Pan "never married [his] girlfriend either by a traditional wedding ceremony or a legal marriage," IJ Decision at 8, is "conclusive" for purposes of our review.[2] *See* 8 U.S.C. § 1252(b)(4)(B); *see*

---

1. Nor did the IJ err when he declined to credit, but without expressly rejecting on the record, petitioner's explanations for why he had omitted any mention of a traditional wedding ceremony in his asylum application and attached statement—namely, that the ceremony was "pretty small" and that he "felt that it wasn't that important" to mention it. As we have emphasized before, it is enough that the IJ here *considered* Pan's testimony, even if he did not "expressly parse or refute on the record each and every one of [Pan's] purported explanations for [his] testimonial inconsistencies or evidentiary gaps." *See Xiao Ji Chen*, 434 F.3d at 160 n. 13; *see also Pavlova v. INS*, 441 F.3d 82, 89 (2d Cir.2006) ("[W]here it is apparent from the record that consideration was given to an applicant's tes-

timony, and where we are capable of reviewing the IJ's consideration for error, it is not necessary for the IJ to recite any particular verbal formula.")

2. Given the IJ's exclusive focus in this part of his decision on whether Pan and his girlfriend had undergone "a traditional wedding ceremony," it appears that the IJ intended to state that "there is no mention of any marriage *ceremony*" in Pan's statement. *See* IJ Decision at 7. However, on remand, the agency remains free to re-evaluate the IJ's analysis of petitioner's marital status in light of the above-quoted statements from petitioner's asylum application and attached statement, either standing alone or as part of the agency's general credibility analysis.

*also Zhou Yun Zhang,* 386 F.3d at 74 (stating that a reviewing court's "limited power of review will not permit it to reverse the BIA simply because [it] disagree[s] with its evaluation of the facts") (alterations in original) (internal quotation marks omitted); *Xue Xiang Chen v. Gonzales,* 418 F.3d 110, 113 (1st Cir.2005) ("If the adverse credibility determination is supported by substantial evidence—that is, if we cannot say a finding that the alien is credible is compelled—then the decision must be affirmed.").

It is clear from the IJ's decision, however, that the IJ evaluated Pan's credibility only insofar as he found that Pan was not married, *see* IJ Decision at 7 ("[T]he Court cannot find that [Pan] has credibly established that he and his girlfriend underwent a traditional wedding ceremony."), and thus did not address whether Pan's remaining testimony regarding his asylum claim—namely, that Pan and his girlfriend violated the family planning policy, went into hiding, and were sought by Chinese authorities—was in fact credible. We therefore remand to the agency to make a definitive general credibility finding regarding Pan's testimony and supporting statements, as such a finding may be determinative in this case. If Pan's statements and testimony, other than his claim to have been married, are credible, then the agency should determine whether Pan has established either past persecution or a well-founded fear of future persecution within the meaning of section 601(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRI-RA"), Pub.L. No. 104–208, 110 Stat. 3009–546, 3009–689 (codified at 8 U.S.C. § 1101(a)(42)).[3]

With respect to Pan's claim of past persecution, we note that because Pan's girlfriend was able to give birth to her child after going into hiding, Pan and his girlfriend have not "been forced to abort a pregnancy or to undergo involuntary sterilization" under the statute. *See* 8 U.S.C. § 1101(a)(42). Moreover, because Pan failed to present any evidence that he had been detained, beaten, or otherwise subjected to physical harm as a result of his alleged opposition to the Chinese family planning policy, Pan's claim in his asylum application that he "was persecuted by [the] Chinese government on account of violating [the] Family Planning policy," J.A. at 155, appears to rest solely on his contention that Chinese officials *threatened* to subject Pan's girlfriend to a forced abortion and that both Pan and his girlfriend subsequently went into hiding. This Court, and others, previously have rejected similar claims involving "unfulfilled" threats. *See Guan Shan Liao v. U.S. Dep't of Justice,* 293 F.3d 61, 70 (2d Cir.2002) (stating that a "threat of detention ... itself ... is not past persecution" and finding that the record was "too sparse" to support any claim arising out of the petitioner's "forced exit from his village and deprivation of government services"); *see also Zhen Hua Li v. Att'y Gen.,* 400 F.3d 157, 165 (3d Cir.2005) (holding that unfulfilled "threats of physical mistreatment, detention, or sterilization" were not "sufficiently imminent or con-

**3.** 8 U.S.C. § 1101(a)(42) provides in relevant part that

a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

crete for the threats themselves to be considered past persecution" where neither the petitioner nor his family members "were actually imprisoned, beaten, sterilized, or otherwise physically harmed"); *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) (holding that "unfulfilled threats" alone do not constitute past persecution unless "the threats are so menacing as to cause significant actual suffering or harm") (internal quotation marks omitted); *cf. Cai Luan Chen v. Ashcroft*, 381 F.3d 221, 231, 232, 234 n. 24 (3d Cir.2004) (Alito, J.) (stating that "persecution is an extreme concept that does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional" and that "we see no basis for concluding that Congress's intent in amending § 1101(a)(42) was to afford relief to *every* person who is a victim of *any* rule or practice that forms a part of the Chinese population control program") (internal quotation marks omitted). However, because the IJ here did not expressly evaluate on the record whether Pan had established a credible claim of past persecution,[4] we leave it to the agency to conduct this analysis in the first instance on remand.

With respect to Pan's claim of a well-founded fear of future persecution, the IJ concluded that Pan had failed to present "any evidence that he would be imprisoned," fined, or beaten "simply because he got his girlfriend pregnant while they were not married . . . or that either of them would be sterilized" in the future. *See* IJ Decision at 8. As part of this conclusion, the IJ noted that Pan's claim "does not appear to be consistent with reported Country Conditions," inasmuch as Pan had failed "to establish that in fact the birth control policy is such that these things would happen to him even though he is not married to his girlfriend." *See id.* In addition, the IJ concluded that because Pan had failed to present any evidence that he and his girlfriend "in fact plan to get married" or "have any additional children," any claim that Pan "would incur any consequences" under the Chinese family planning policy was "merely speculative." *See id.* at 8–9.

Although we have no reason to disturb these specific findings by the IJ, it appears that the IJ's analysis was based in large part on his determination that, because Pan and his girlfriend were not "married . . . either by a traditional wedding ceremony or a legal marriage," Pan had "no *legal status* to argue that there would be any consequences to him" under the family planning policy.[5] *See id.* at 8 (emphasis added). Recently, in *Shi Liang Lin v. U.S. Dep't of Justice*, 416 F.3d 184 (2d Cir.2005), we remanded to the BIA to "more precisely explain [the] rationale" for

---

**4.** Indeed, it appears that the IJ treated Pan's asylum claim solely as one of future persecution. *See* IJ Decision at 5 ("The respondent's claim for asylum is based on his allegation that he holds a well-founded fear of persecution if returned [to] China on account of their country's birth control policy[,] which limits the number of children permitted to each couple.").

**5.** The IJ stated in relevant part:
  Having made that finding [that Pan was not married to his girlfriend], the Court cannot find that [Pan] has established that he holds a well-founded fear of persecution if returned to China. This is because [Pan] never married [his] girlfriend either by a traditional wedding ceremony or a legal marriage. Therefore, the fact that there may be consequences as to whether they have additional children would not be considered with respect to his application for asylum since he has no legal status to argue that there would be any consequences to him since he is not married to this individual, either because he has no marriage certificate or because he has not undergone a traditional wedding ceremony.
  IJ Decision at 7–8.

its holding in *In re C–Y–Z–*, 21 I. & N. Dec. 915 (BIA 1997) (en banc) (establishing *spousal* eligibility for asylum based on coercive family planning), and to "clarify whether, when, and why *boyfriends and fiancés* may or may not similarly qualify as refugees pursuant to IIRIRA § 601(a)." *Shi Liang Lin*, 416 F.3d at 192 (emphasis added). In so holding, we stated that it was "impossible for us to properly determine" the eligibility of boyfriends and fiancés under IIRIRA § 601(a), as codified at 8 U.S.C. § 1101(a)(42), because the BIA had failed "to articulate a reasoned basis" for its decision in *C–Y–Z–*, *see Shi Liang Lin*, 416 F.3d at 191—a view that has been expressed in various opinions of our Court, which have noted the inadequate reasoning underlying the BIA's decision, as well as the unintended practical consequences of that policy. *See Shi Liang Lin*, 416 F.3d at 191 ("The BIA never, for example, identified the specific statutory language pursuant to which it deemed spouses eligible for asylum under IIRIRA § 601(a), nor did the BIA endeavor to explain the reasoning motivating its desired construction. Frankly, it appears to us that the BIA's analysis in *C–Y–Z–* rested largely on the Immigration and Naturalization Service's concession in that case."); *Ai Feng Yuan v. U.S. Dep't of Justice*, 416 F.3d 192, 197 (2d Cir.2005) (noting that the "plain text" of 8 U.S.C. § 1101(a)(42) "is in tension with the construction that the BIA has given it"); *Zhou Yun Zhang*, 386 F.3d at 72–73 (stating that the "expansion of the concept of 'refugee'" under § 1101(a)(42) and *C–Y–Z–*, "coupled with the law's recognition that some asylum claims cannot be corroborated, presents significant challenges in distinguishing valid from invalid claims of persecution based on China's coercive population control policies," and noting that "men with [economic] motives [to emigrate from China] may have an incentive to fabricate spousal persecution claims

to enhance the likelihood of their admission into the United States").

In *Xue Xiang Chen v. Gonzales*, 418 F.3d 110 (1st Cir.2005), the Court of Appeals for the First Circuit recognized an "active circuit split" on the question of whether § 1101(a)(42) applies to non-married partners, *see id.* at 111 & n. 2 (collecting cases), but declined to address the issue because the IJ there had rested her decision on an independent finding of adverse credibility, *see id.* at 111. As noted above, the IJ in this case failed to make a general adverse credibility finding regarding Pan's testimony and supporting statements beyond his claim that he had been married in China. As a result, assuming that no such adverse credibility finding is made on remand, our determination here turns exclusively on whether Pan qualifies—as a matter of law and under the facts presented—as a "refugee" within the meaning of § 1101(a)(42) and the BIA's decision in *C–Y–Z–*. Accordingly, for the reasons stated in *Shi Liang Lin*, we are required to remand to the BIA so that the agency may expressly determine in the first instance whether Pan has (1) demonstrated a well-founded fear that he himself will be sterilized if returned to China; or (2) established a derivative claim of a well-founded fear of future persecution based on any threat of abortion or sterilization against his girlfriend.

Because Pan has failed to raise in his brief any arguments challenging the IJ's denial of his withholding of removal and CAT claims, we deem those claims to have been waived. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 542 n. 1, 545 n. 7 (2d Cir.2005).

\*  \*  \*  \*  \*  \*

For the foregoing reasons, the petition for review is GRANTED and the cause is REMANDED for further proceedings consis-

tent with this opinion. Due to the unexplained delay of the BIA in responding to our remand in *Shi Liang Lin,* we direct that the BIA inform this panel in writing by Friday, June 30, 2006 as to when a responsive opinion by the BIA in this case will be issued. We further direct that the Clerk of the Court transmit a copy of this opinion to the United States Attorney General, the Director of the Executive Office for Immigration Review, the Director of the Office of Immigration Litigation, and the United States Attorney's Office for the Southern District of New York. This panel retains jurisdiction to rule upon the instant petition and decide the issues on appeal following the disposition of the remand. *See Shi Liang Lin,* 416 F.3d at 192; *United States v. Jacobson,* 15 F.3d 19, 21–22 (2d Cir.1994).