*KC v. Garland*

# United States Court of Appeals
# For the Second Circuit

August Term 2023

Submitted:  September 8, 2023
Decided:  July 17, 2024

No. 20-3043

ARJUN KC,

*Petitioner*,

*v.*

MERRICK B. GARLAND, United States Attorney General,

*Respondent*.

Before:     LIVINGSTON, *Chief Judge*, CABRANES, and SULLIVAN, *Circuit Judges*.

Arjun KC, a native and citizen of Nepal, petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming a decision of an Immigration Judge ("IJ") that denied his claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") and ordered him removed from the United States.  In reaching that decision, the IJ found KC credible but concluded that he had demonstrated neither past persecution nor a well-founded fear of future persecution.  KC challenges these conclusions on appeal, arguing that he experienced persecution in Nepal when Maoist partisans threatened to kill him unless he supported their party and that this past persecution gives rise to a

presumption of future persecution in Nepal. We reject KC's contention that death threats are *per se* indicative of past persecution and instead hold that our previously articulated unfulfilled-threats doctrine applies to death threats and non-death threats alike. Applying that doctrine to the threats alleged here, we agree with the IJ and BIA that the death threats directed at KC were not sufficiently imminent, concrete, or menacing to constitute past persecution under our usual case-by-case approach. Because KC offered no other evidence demonstrating a well-founded fear of future persecution, we **DENY** KC's petition for review and **AFFIRM** the BIA's decision ordering his removal.

Khagendra Gharti Chhetry, Esq., Chhetry & Associates, P.C., New York, NY, *for Petitioner*.

Brian Boynton, Acting Assistant Attorney General, Sabatino F. Leo, Assistant Director, Office of Immigration Litigation, Aaron D. Nelson, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, *for Respondent*.

Richard J. Sullivan, *Circuit Judge*:

Arjun KC, a native and citizen of Nepal, petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming a decision of an Immigration Judge ("IJ") that denied his claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") and ordered him removed from the United States. In reaching that decision, the IJ found KC credible but concluded that he had demonstrated neither past persecution nor a well-founded fear of future persecution. KC challenges these conclusions on appeal, arguing

2

that he experienced persecution in Nepal when Maoist partisans threatened to kill him unless he supported their party and that this past persecution gives rise to a presumption of future persecution in Nepal. We reject KC's contention that death threats are *per se* indicative of past persecution and instead hold that our previously articulated unfulfilled-threats doctrine applies to death threats and non-death threats alike. Applying that doctrine to the threats alleged here, we agree with the IJ and BIA that the death threats directed at KC were not sufficiently imminent, concrete, or menacing to constitute past persecution under our usual case-by-case approach. Because KC offered no other evidence demonstrating a well-founded fear of future persecution, we **DENY** KC's petition for review and **AFFIRM** the BIA's decision ordering his removal.

## I. BACKGROUND

### A. Facts

In his removal proceedings, KC alleged that supporters of the Nepal Communist Party, also known as "Maoists," persecuted him and drove him from his homeland after he refused to support their cause. Following in his father's footsteps, KC joined the Nepali army in 2006, serving as a driver. In 2014, shortly after KC returned home from a United Nations ("U.N.") peacekeeping mission, members of the Maoist party began to demand his support. In the first incident,

3

in August 2014, a band of "[t]en to fifteen" Maoists appeared at KC's family home and insisted that he donate money to their party and personally join their ranks. Certified Admin. Record ("CAR") at 54. This was familiar territory for KC and his family, as Maoist partisans had (unsuccessfully) made similar demands on his father in the past. After KC too refused to support the Maoists, they issued him an ultimatum: join their cause or be killed.

Over the next several weeks, the Maoists continued to pressure KC. They called him on the telephone several times and showed up at his doorstep several more, each time repeating their entreaty for his support. They also told him that his experience in the army would benefit their party and said that they knew he had made a sizable salary during the U.N. peacekeeping mission. On at least one of these occasions, the partisans doubled down on their death threat, telling KC's family that they would kill him if he continued to ignore their demands. KC was adamant, however, that he would not help the Maoists "at any cost." *Id.* at 101.

Finally, KC received a call from his uncle in September 2014 warning him that the Maoists were plotting to go to KC's house that day and kill him. KC immediately fled to Kathmandu, the capital of Nepal, and took refuge with

4

relatives there. His wife later reported that the Maoists had indeed shown up at their home looking for KC and threatened to kill him if he returned.

Unharmed in Kathmandu, KC sought help from the police. But by KC's account, the police refused to take his report, which KC attributes to either fear of or influence from the Maoists.

KC remained in Kathmandu for about a year. From his family, KC learned that the Maoists came looking for him again and that they had even warned his wife that "[a]s soon as we meet [KC], we will kill him." *Id.* at 104–05. KC left Nepal in September 2015 and eventually entered the United States from Mexico on January 5, 2016.

Despite KC's departure, the Maoists returned to his family home once more, in May 2016. There, they confronted KC's father, accusing father and son of ignoring their orders and demanding that KC's father support the Maoists in lieu of KC. After KC's father again refused their demands for money, the Maoists hit him at least once and threatened that they would "take care of [KC's father] later." *Id.* at 278. KC does not allege that the Maoists came looking for him again after this incident.

**B.** **Procedural History**

KC was detained shortly after crossing the U.S.-Mexico border and placed in removal proceedings. Represented by counsel, KC admitted the factual allegations in the Notice to Appear ("NTA") and conceded he was removable as charged. Thereafter, KC filed an application for asylum, withholding of removal, and CAT relief.

In a July 6, 2018 decision, the IJ found that although KC was credible he had failed to show past persecution or a well-founded fear of future persecution. The IJ thus denied KC's claims for relief. KC appealed that decision to the BIA, which affirmed the IJ's decision on August 11, 2020 without opinion.

## II.   STANDARD OF REVIEW

"When the BIA summarily affirms the decision of an IJ, we review the IJ's decision as the final agency determination." *Shunfu Li v. Mukasey*, 529 F.3d 141, 146 (2d Cir. 2008). We review questions of law and application of law to fact *de novo* and factual findings for substantial evidence. *See Pan v. Holder*, 777 F.3d 540, 543 (2d Cir. 2015). Under the substantial evidence standard, "the administrative

6

findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

In this case, the agency found the applicant to be credible but ultimately rejected his claim of past persecution. The standard of review in these circumstances is unsettled in our Circuit. Some of our decisions indicate, without analysis, that when the agency finds the applicant to be credible the Court should treat the applicant's factual allegations as undisputed and review *de novo* the legal question of whether those facts establish past persecution. *See, e.g.*, *Huo Qiang Chen v. Holder*, 773 F.3d 396, 403 (2d Cir. 2014); *Mirzoyan v. Gonzales*, 457 F.3d 217, 220 (2d Cir. 2006). Other cases suggest that whether the facts alleged by the applicant constitute past persecution is a factual determination subject to substantial evidence review. *See, e.g.*, *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020); *Diallo v. I.N.S.*, 232 F.3d 279, 287 (2d Cir. 2000).[1] Because KC's petition fails under either standard, we need not resolve this question here.

### III. DISCUSSION

On appeal, KC argues that the IJ erred in rejecting his asylum, withholding of removal, and CAT claims on the grounds that KC had not faced past

---

[1] Other circuits have likewise recognized that the standard of review in this posture is unsettled.

persecution, and had not established a well-founded fear of future persecution, in Nepal. We agree with the IJ that the death threats KC faced did not amount to persecution and that KC was therefore not entitled to a presumption of future persecution. Accordingly, we affirm the IJ's denial of relief.

### A.     Asylum

An applicant has the burden of proving eligibility for asylum. *See* 8 C.F.R. § 1208.13(a). An applicant may do so by demonstrating that he has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See id.* § 1208.13(b); *see also Singh v. Garland*, 11 F.4th 106, 114 (2d Cir. 2021). If an applicant establishes past persecution, he "is presumed to have a well-founded fear of persecution." *Singh*, 11 F.4th at 114 (internal quotation marks omitted). The government, however, may rebut that presumption if "there has been a fundamental change in circumstances" or "the applicant could avoid future persecution by relocating to

*See, e.g., Flores Molina v. Garland*, 37 F.4th 626, 640–41, 649 (9th Cir. 2022) (Korman, J., concurring, and VanDyke, J., dissenting) (disputing the applicable standard of review); *Gjetani v. Barr*, 968 F.3d 393, 396–97, 397 n.2, 400–01 (5th Cir. 2020) (Ho, J., majority opinion, and Dennis, J., dissenting) (same); *Cha Liang v. Att'y Gen. U.S.*, 15 F.4th 623, 626–27 (3d Cir. 2021) (Jordan, J., concurring) (same).

8

another part of the applicant's country of nationality." *Id.* (alterations omitted) (quoting 8 C.F.R. § 1208.13(b)(1)(i)(A)–(B)).

### 1. *Past Persecution*

Past persecution is assessed in the "aggregate" by examining the "cumulative" severity of the alleged maltreatment. *Poradisova v. Gonzales*, 420 F.3d 70, 79–80 (2d Cir. 2005) (internal quotation marks omitted). "[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Mei Fun Wong v. Holder*, 633 F.3d 64, 72 (2d Cir. 2011) (internal quotation marks omitted). Although "[v]arious types of conduct constitute persecution," *Guan Shan Liao v. U.S. Dep't of Just.*, 293 F.3d 61, 67 (2d Cir. 2002), that conduct must be more than "mere harassment" to rise to the level of persecution, *Tian-Yong Chen v. U.S. I.N.S.*, 359 F.3d 121, 128 (2d Cir. 2004) (internal quotation marks omitted). And "[t]he difference between harassment and persecution is necessarily one of degree that must be decided on a case-by-case basis." *Ivanishvili v. U.S. Dep't of Just.*, 433 F.3d 332, 341 (2d Cir. 2006). For instance, most cases of persecution involve violence, detention, or other violations of bodily integrity and autonomy. Persecution "includes more than threats to life or freedom" and extends to "non-life-threatening violence and physical abuse."

9

*Tian-Yong Chen*, 359 F.3d at 128 (alterations and internal quotation marks omitted).[2]

We have thus recognized that "unfulfilled threats alone" rarely qualify as persecution. *Scarlett*, 957 F.3d at 328 (alterations omitted) (quoting *Gui Ci Pan v. U.S. Att'y Gen.*, 449 F.3d 408, 412 (2d Cir. 2006)). Instead, an applicant must show that the threat was "imminent or concrete" or "so menacing as itself to cause actual suffering or harm." *Id.* (internal quotation marks omitted). This means that, without aggravating factors that suggest imminence or extreme menace, unfulfilled threats are merely harassment and cannot qualify as past persecution. *See, e.g., id.* ("'[U]nfulfilled' threats alone generally do not rise to the level of persecution." (quoting *Gui Ci Pan*, 449 F.3d at 412–13)); *Huo Qiang Chen*, 773 F.3d at 406 ("[T]hreats of persecution, no matter how credible, do not demonstrate past persecution."); *Gui Ci Pan*, 449 F.3d at 412–13 ("This Court, and others, previously have rejected similar claims [of persecution] involving 'unfulfilled' threats.").

Here, KC's claim of past persecution is based on unfulfilled threats. He alleges, for instance, that the Maoists made various threats to kill him, including

---

[2] In circumstances not relevant here, we have also recognized economic persecution – the "deliberate imposition of a substantial economic disadvantage" – as a form of persecution. *Guan Shan Liao*, 293 F.3d at 67.

in person, by phone, and through his wife. To be sure, these threats were all *death*

threats, which was not the case in our published decisions addressing unfulfilled

threats. *See, e.g.*, *Scarlett*, 957 F.3d at 322, 328 (involving past "verbal[] abuse[]"

toward, and surveillance of, applicant); *Huo Qiang Chen*, 773 F.3d at 406 (involving

imposition of monetary fine); *Gui Ci Pan*, 449 F.3d at 412–13 (involving threats to

subject applicant's girlfriend to a "forced abortion"). Nevertheless, we see no

reason why death threats should automatically or even presumptively qualify as

past persecution or otherwise call for a framework distinct from our existing

unfulfilled-threats doctrine, which examines threats on a case-by-case basis.

Depending on the circumstances, a death threat may be too speculative or specious

– as opposed to imminent or concrete – to constitute persecution. We therefore

hold that our existing unfulfilled-threats doctrine extends to death threats, which

will constitute past persecution only if the applicant can point to aggravating

circumstances indicating that the death threat was "so imminent or concrete" or

11

"so menacing as itself to cause actual suffering or harm."  *Scarlett*, 957 F.3d at 328

(internal quotation marks omitted).[3]

In so holding, we do not write on a blank slate.  At least one of our

unpublished decisions has already concluded that death threats do not qualify as

persecution *per se*.  *See Ramirez-Galvez v. Barr*, 821 F. App'x 19, 22 (2d Cir. 2020)

("[D]eath threat[s] . . . do[] not tip the scales because threats, while relevant to the

analysis of the possibility of future harm, generally will not constitute past

persecution.").  And several of our sister circuits have held that death threats, like

other unfulfilled threats, do not automatically establish persecution.  *See Lim v.

I.N.S.*, 224 F.3d 929, 936 (9th Cir. 2000) ("In certain extreme cases, we have held

that repeated and especially menacing death threats can constitute a primary part

of a past persecution claim, particularly where those threats are combined with

confrontation or other mistreatment."); *Un v. Gonzales*, 415 F.3d 205, 210 (1st Cir.

2005) ("[C]redible verbal death threats *may* fall within the meaning of

'persecution.'" (emphasis added)); *Japarkulova v. Holder*, 615 F.3d 696, 700–01 (6th

Cir. 2010); *Pathmakanthan v. Holder*, 612 F.3d 618, 624 (7th Cir. 2010); *Lemus-Arita v.*

---

[3] Of course, it stands to reason that some death threats are more "menacing" than other types of threats.  *Scarlett*, 957 F.3d at 328 (internal quotation marks omitted).  But the point remains that we must assess each threat – whether involving death or other harms – on a case-by-case basis to determine whether it was imminent, concrete, or menacing enough to constitute persecution.

12

*Sessions*, 854 F.3d 476, 481–82 (8th Cir. 2017); *Matumona v. Barr*, 945 F.3d 1294, 1305 (10th Cir. 2019); *Blanco v. Att'y Gen. U.S.*, 967 F.3d 304, 312–13 (3d Cir. 2020); *Argueta-Hernandez v. Garland*, 87 F.4th 698, 708–09 (5th Cir. 2023).[4]  We are persuaded by the logic of these well-reasoned decisions.  As the Ninth Circuit has explained, treating death threats as persecution *per se* would "unduly handcuff" immigration authorities:  because "claims of threats are hard to disprove," many applicants could establish past persecution simply by alleging that such threats occurred.  *Lim*, 224 F.3d at 936.

Applying our existing unfulfilled-threats standard here, we agree with the agency that KC has not demonstrated past persecution.  At core, KC alleges that the Maoists threatened his life several times and beat his father once.  While these are serious allegations, none of the surrounding circumstances indicate that the threats to his life were sufficiently "imminent or concrete" or "menacing" under our unfulfilled-threats doctrine.  *Scarlett*, 957 F.3d at 328 (internal quotation marks

---

[4] As far as we are aware, only the Fourth Circuit treats death threats as persecution *per se*.  *See Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015) ("[W]e have expressly held that the threat of death qualifies as persecution." (internal quotation marks omitted)).  But many of the Fourth Circuit's cases finding persecution based on death threats involved aggravating circumstances that might be sufficient to constitute persecution even under our case-by-case inquiry.  *See, e.g.*, *id.* at 947 (finding persecution where gang members "put a gun to [applicant's] head" and threatened to kill her); *Arita-Deras v. Wilkinson*, 990 F.3d 350, 355, 359 (4th Cir. 2021) (finding persecution where aggressors made death threats to applicant after murdering several of her husband's family members and shooting at her car).

omitted). It is true that at least one death threat was made directly to KC in person, when over ten Maoists came to his home and threatened to kill him unless he pledged to support their cause. But KC does not allege that his harassers attempted to carry out the death threat or otherwise subjected him to violence. *Cf. Kaur v. Wilkinson*, 986 F.3d 1216, 1223 (9th Cir. 2021) ("[A]ttempted murder constitutes persecution."); *Aguilar-Escoto v. Garland*, 59 F.4th 510, 516 (1st Cir. 2023) ("[T]he addition of physical violence, although not required, makes a threat more likely to constitute persecution." (internal quotation marks omitted)); *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 947 (4th Cir. 2015) (finding persecution where gang members "put a gun to [applicant's] head" and threatened to kill her).

While KC asserts that the Maoists attacked his father, that incident occurred nearly two years after KC fled his village, involved only a single punch or kick, and was apparently motivated by the assailants' desire for his father's money as opposed to a desire to threaten KC. *See* CAR at 58 n.4 (noting that the Maoists demanded money, not political support, from KC's father, suggesting that their underlying motive was "financial gain"). Although violence against family members paired with death threats *could* amount to persecution on different facts, the attack on KC's father was not significant enough – in temporal nexus,

14

motivation, and severity – to render the death threats against KC sufficiently imminent or concrete. *Cf. Arita-Deras*, 990 F.3d at 355, 359 (finding persecution where death threats were accompanied by murders of several family members); *Sangha v. I.N.S.*, 103 F.3d 1482, 1486–87 (9th Cir. 1997) (finding persecution where father was "beat[en] up" to pressure applicant and his brother to join militant group followed by death threat "[a] month or two later" making same demand). If anything, the fact that the Maoists had threatened KC's father for years prior to the threats against KC and resorted to violence only a single time – and with only a single blow – suggests the death threats were not particularly imminent or concrete to begin with.

At bottom, KC does not allege the sort of aggravating factors that could elevate the unfulfilled death threats to the level of persecution. We thus affirm the IJ's conclusion that KC did not experience past persecution in Nepal.

2. *Future Persecution*

Applicants who have not made a showing of past persecution – with its presumption of future persecution – may nonetheless demonstrate a well-founded fear of future persecution directly, without relying on a predicate showing of past persecution. *See Guan Shan Liao*, 293 F.3d at 67 (explaining that applicants may

15

establish eligibility either by showing past persecution or a well-founded fear of future persecution). In his briefing, however, KC fails to argue that he held a well-founded fear of persecution independent of any past persecution. Rather, KC's arguments about future persecution are predicated on the presumption that follows from demonstrating past prosecution. *See* KC Br. at 23–24. KC thus forfeited any claim of future prosecution separate from his allegations of past persecution. *See United States v. Babwah*, 972 F.2d 30, 34 (2d Cir. 1992) ("[A]n argument not raised on appeal is deemed abandoned.").

### B. Withholding of Removal and CAT Claims

KC also briefly argues that the IJ erred by failing to analyze his CAT claim separately from his asylum claim. But as explained above, the IJ properly determined that KC's failure to establish a well-founded fear of persecution "necessarily" resolved KC's claims for withholding of removal and CAT relief, CAR at 58, because both of those forms of relief require a greater likelihood of persecution or torture than do asylum claims, *see Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010) ("Because [petitioner] fails to demonstrate the 'slight, though discernable chance of persecution' required for the grant of asylum, he necessarily fails to demonstrate the 'clear probability of future persecution' required for withholding of removal, and the 'more likely than not' to be tortured standard

16

required for CAT relief." (citations omitted)).  The IJ thus properly denied KC's withholding of removal and CAT claims.

## IV. CONCLUSION

For the foregoing reasons, we conclude that KC has not established a claim for asylum, withholding of removal, or relief under CAT.  Therefore, we **DENY** KC's petition for review and **AFFIRM** the decision of the BIA ordering his removal.