22-6552-ag
*Dukuray Jawara v. Bondi*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of May, two thousand twenty-five.

PRESENT:
> REENA RAGGI,
> JOSEPH F. BIANCO,
> ALISON J. NATHAN,
> *Circuit Judges.*

---

MAHAMMAD DUKURAY JAWARA,

*Petitioner*,

v.                                                        22-6552-ag

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,

*Respondent*.

---

FOR RESPONDENT:          Brian M. Boynton, Principal Deputy Assistant Attorney General, Anthony C. Payne, Assistant Director, and Joseph D. Hardy, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, District of Columbia.

FOR PETITIONER:          Mahammad Dukuray Jawara, *pro se*, Bronx, New York.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review of a Board of Immigration Appeals ("BIA") decision, entered on November 8, 2022, is **DISMISSED** in part and **DENIED** in part.

Petitioner Mahammad Dukuray Jawara, a native and citizen of The Gambia and a citizen of Spain, seeks review of the BIA's order dismissing his appeal and affirming the November 30, 2018 decision of an Immigration Judge ("IJ"), which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See generally In re Dukuray Jawara v. Bondi*, No. A205-709-619 (B.I.A. Nov. 8, 2022), *aff'g* No. A205-709-619 (Immigr. Ct. N.Y. City Nov. 30, 2018). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

We have reviewed the IJ's decision as modified and supplemented by the BIA. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review *de novo* the agency's fact-finding under the substantial evidence standard and its adjudication of questions of law, as well as its application of law to fact. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I.    Asylum

Asylum is generally unavailable "unless the [applicant] demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the [applicant]'s arrival in the United States." *Id.* § 1158(a)(2)(B). However, an application "may be considered" outside the deadline, "if the [applicant] demonstrates . . . either the existence of

2

changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay," *id.* § 1158(a)(2)(D), and the application has been filed within a "reasonable period" in light of those circumstances, 8 C.F.R. § 1208.4(a)(4)(ii) & (a)(5). Our jurisdiction to review the BIA's findings regarding the timeliness of an asylum application and the circumstances excusing untimeliness is limited to colorable "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); *see id.* § 1158(a)(3). An applicant raises such a claim or question if he alleges the BIA misapplied the law, used an incorrect legal standard, or "totally overlooked" or "seriously mischaracterized" important facts. *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009); *see also Barco-Sandoval v. Gonzales*, 516 F.3d 35, 40 (2d Cir. 2007).

It is undisputed that Dukuray Jawara arrived in the United States in 2009 and filed his asylum application in 2018, well beyond the one-year deadline. On appeal, Dukuray Jawara's arguments regarding his delay are identical to those raised in his petition before the BIA. He does not argue that the BIA committed an error of law, but simply reiterates his argument that his epilepsy, resulting from a head injury in 2014, constitutes an extraordinary and changed circumstance because it is a "[s]erious illness or mental or physical disability" and caused "ineffective assistance of counsel" by limiting his ability to retain an attorney. Pet.'s Br. at 15; Certified Admin. Record at 31; *see* 8 C.F.R. § 1208.4(a)(5)(i), (iii). The BIA decision acknowledged that Dukuray Jawara "was diagnosed with epilepsy in 2014," but noted that he "did not meet with immigration lawyers until August 2015," and "[e]ven then, [he] still did not file an asylum application until almost 3 years later." Certified Admin. Record at 4. In light of this delay, the BIA concluded that Dukuray Jawara had not established changed or extraordinary circumstances sufficient to excuse the untimeliness of his asylum application.

3

We conclude that the BIA did not overlook or mischaracterize important facts regarding Dukuray Jawara's epilepsy or the effect it had on his delayed filing. *See Jin Yi Liao v. Holder*, 558 F.3d 152, 156 n.3 (2d Cir. 2009) ("[W]e will generally presume that the agency has taken into account all of the evidence before it, unless the record compellingly suggests otherwise." (alteration adopted) (internal quotation marks and citation omitted)); *Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) ("[W]here the BIA has given reasoned consideration to the petition, and made adequate findings, it [need not] expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." (internal quotation marks and citation omitted)). Accordingly, Dukuray Jawara has not raised a colorable constitutional claim or question of law, and we therefore dismiss his petition seeking review of the agency's denial of asylum for lack of jurisdiction.

## II. Withholding of Removal

An applicant for withholding of removal has the burden to establish past persecution or that it is "more likely than not" he would be persecuted in the future on account of a protected ground. 8 C.F.R. § 1208.16(b); *see Wei Sun v. Sessions*, 883 F.3d 23, 27–28 (2d Cir. 2018) ("Eligibility for withholding of removal requires a clear probability of persecution, *i.e.*, it is more likely than not that the [applicant] would be subject to persecution." (alteration adopted) (internal quotation marks and citation omitted)). "[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Mei Fun Wong v. Holder*, 633 F.3d 64, 72 (2d Cir. 2011) (internal quotation marks and citation omitted). "Persecution includes more than threats to life or freedom and extends to non-life-threatening violence and physical abuse." *KC v. Garland*, 108 F.4th 130, 135 (2d Cir. 2024) (internal quotation marks and citation omitted). However, the harm must be sufficiently severe, rising above "mere harassment." *Ivanishvili v.*

4

*U.S. Dep't of Just.*, 433 F.3d 332, 341 (2d Cir. 2006).  In evaluating a past persecution claim, the agency must consider the harm suffered in the aggregate.  *See Poradisova v. Gonzales*, 420 F.3d 70, 79–80 (2d Cir. 2005).

"Applicants who have not made a showing of past persecution . . . may nonetheless demonstrate a well-founded fear of future persecution directly, without relying on a predicate showing of past persecution."  *KC*, 108 F.4th at 137; *see also* 8 C.F.R. § 1208.16(b)(2).  An applicant can meet that burden by establishing that he "would be singled out individually" for persecution or by demonstrating "a pattern or practice of persecution of a group of persons similarly situated to [him]."  8 C.F.R. § 1208.16(b)(2).  Absent "solid support" in the record, an applicant's fear of potential persecution is "speculative at best."  *Jian Xing Huang v. INS*, 421 F.3d 125, 129 (2d Cir. 2005) (per curiam).

As set forth below, we conclude that the agency did not err in denying Dukuray Jawara's claim for withholding of removal as to either Spain or The Gambia.

### A.    Spain

Dukuray Jawara asserts that he fears returning to Spain because of the harassment and discrimination he faced on account of being Black and Muslim.[1]  Although discrimination and harassment based on race and religion are offensive, racial slurs and harassment, without more, do not constitute past persecution.  *See Ivanishvili*, 433 F.3d at 341; *see also Mei Fun Wong*, 633 F.3d at 72.  Nor does the single assault that Dukuray Jawara suffered at the hands of private citizens while leaving a bar in Spain.  *See Jian Qiu Liu v. Holder*, 632 F.3d 820, 822 (2d Cir. 2011) (per curiam) (finding no error in BIA's conclusion that a beating by family planning officials prior to

---

[1]  He does not argue that he would be persecuted in Spain based on his epilepsy diagnosis and, thus, we do not address that issue.  *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) (per curiam).

an arrest did not constitute persecution where petitioner did not suffer serious injury and did not require formal medical treatment).

Moreover, Dukuray Jawara did not establish a "clear probability" that government officials would acquiesce in his future persecution as a Black Muslim upon return to Spain. *Wei Sun*, 883 F.3d at 27–28 (internal quotation marks and citation omitted); *see Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593–94 (2d Cir. 2021). He did not show that he would be singled out for persecution, based on the same racist treatment he previously endured; he did not present evidence that the treatment would escalate; and he did not identify anyone in particular who wished him harm. Additionally, although his country conditions evidence demonstrated general bias, discrimination, racial profiling, and assaults, it does not establish a pattern or practice of harm rising to the level of persecution. *See Mei Fun Wong*, 633 F.3d at 72; *Ivanishvili*, 433 F.3d at 341; *cf. In re A-M-*, 23 I. & N. Dec. 737, 741 (B.I.A. 2005) (defining pattern or practice as persecution that is "systemic or pervasive").

Accordingly, we discern no error in the agency's denial of Dukuray Jawara's claim for withholding of removal as to Spain.

**B.     The Gambia**

Dukuray Jawara asserts that he fears returning to The Gambia on account of his epilepsy diagnosis.[2] Because he was only diagnosed with epilepsy in 2014 in the United States and left The Gambia in 2009, he cannot claim past persecution on that basis. Therefore, the question before us is whether the agency erred in concluding that he had not established that he would "more likely than not" be persecuted. 8 C.F.R. § 1208.16(b)(2).

---

[2] Dukuray Jawara abandoned his claim based on tribal identity. *See Debique*, 58 F.4th at 684.

6

Dukuray Jawara testified that people in The Gambia believe epilepsy is caused by evil spirits and, as such, there is a general stigma against those with epilepsy, which would inhibit his ability to get proper medical treatment and be compounded by the lack of resources, hospitals, and medication in The Gambia. However, his opinion was based on stories from family and friends and his own beliefs about Gambian culture. He conceded on cross-examination that he had never seen anyone have an epileptic seizure in The Gambia, let alone observed police, paramedics, or bystanders refuse to help or a hospital refuse to treat an individual suffering from this condition. Thus, the agency did not err in finding his fear speculative. *See Jian Xing Huang*, 421 F.3d at 129.

His country conditions evidence does not compel a contrary conclusion. The reports, which pre-dated his hearing by at least a decade, confirm that in some African countries, including The Gambia, it is thought that epilepsy is caused by evil spirits, may be contagious, and that social stigma may result. However, this evidence also reveals a high level of acceptance of people with epilepsy in Gambian society and that Gambians generally do not blame people with epilepsy or punish them for their seizures. At most, then, the evidence reflects that Dukuray Jawara will suffer some stigma, which is insufficient to establish persecution. *See Mei Fun Wong*, 633 F.3d at 72; *Ivanishvili*, 433 F.3d at 341.

In sum, we conclude that the agency did not err in denying Dukuray Jawara's claim for withholding of removal as to The Gambia.

## III.    CAT Relief

Dukuray Jawara does not assert a CAT claim with respect to Spain, *see Debique*, 58 F.4th at 684, and his CAT claim with respect to The Gambia fails for the same reason as his withholding of removal claim, which was based on the same feared harm, *see Kyaw Zwar Tun v. INS*, 445 F.3d 554, 567 (2d Cir. 2006) ("[T]orture requires proof of something more severe than the kind of

7

treatment that would suffice to prove persecution."). Moreover, Dukuray Jawara did not show the requisite government intent for CAT relief. *See* 8 C.F.R. § 1208.18(a)(1) (requiring that the harm be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity"). Nothing in the record supports an inference that inadequacies in medical care for people with epilepsy are a result of the government's intent to harm people with epilepsy. *See Pierre v. Gonzales*, 502 F.3d 109, 121 (2d Cir. 2007) (concluding that "[b]arbaric prison conditions" were not a basis for CAT relief where they stemmed from "poverty, neglect, or incompetence" rather than an intent to torture).

Therefore, Dukuray Jawara has failed to identify any error in the agency's determination that he was not entitled to CAT relief.

*     *     *

We have considered Dukuray Jawara's remaining arguments and conclude that they are without merit. Accordingly, the petition for review of the BIA decision is **DISMISSED** as to asylum and **DENIED** as to withholding of removal and CAT relief. All pending motions and applications are **DENIED** and stays **VACATED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court